# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8025 | **DATE** | 5/20/2003 |
| **CASE TITLE** | Chgo Dist. Council of Carp PenFd vs. Wauconda Roofing et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiffs' first motion to enforce the settlement agreement [41-1] is denied and defendant Prate's motion to exclude hearsay evidence [54-1] is also denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 1 2003 date docketed | 64 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | 5/20/2003 date mailed notice | |
| | KF courtroom deputy's initials | 03 MAY 20 AM 11:36 | KF mailing deputy initials | |
| | | Date/time received in central Clerk's Office U.S. DISTRICT COURT | | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., ) ) ) | |
| Plaintiffs, ) ) ) | No. 01 C 8025 |
| v. ) ) ) | Mag. Judge Michael T. Mason |
| WAUCONDA ROOFING CO., INC., MICHAEL A. PRATE, INC., and PRATE INSTALLATIONS, INC. ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiffs Chicago District Council of Carpenters Pension, Welfare and Apprenticeship Funds, et al. (the "Trust Funds") sued Defendants Wauconda Roofing Co., Inc., Prate Installations, Inc., and Michael A. Prate (collectively, "Prate") for failing to make sufficient contributions to the Trust Funds on behalf of their unionized workers. The parties entered into a settlement agreement on July 12, 2002. In the settlement agreement, Prate agreed, among other things, to pay their workers by the hour and keep appropriate time records.

Since the entering of the settlement agreement, Trust Funds has filed several motions to enforce the settlement agreement. We addressed Trust Funds' second motion to enforce in our opinion dated April 4, 2003. *See, Chicago Dist. Council of Carpenters Pension Fund, et al. v. Wauconda Roofing Co., Inc., et al.*, 2003 WL 1798937 (N.D. Ill. April 4, 2003). We now address Trust Funds' first motion to enforce.

## FACTS

This motion to enforce arises out of a dispute over the hours reported on the time card of Prate employee Arnulfo Valdez ("Arnulfo") during the week of July 29, 2002. During this week, Arnulfo, along with crew leader Humberto Valdez ("Humberto") and crew member Isaac Valdez ("Isaac"), worked together on a residential roofing assignment for Prate.[1] At the end of the week, each individual turned in a time card recording the number of hours worked that week. Humberto and Isaac each stated that they had worked 22 hours. Arnulfo stated that he had worked 40 hours. All three members of the crew agree that they had taken frequent breaks throughout the week, including a barbecue at Humberto's house on one of the days.

After Arnulfo's time card was received, the Payroll Department notified Human Resources Manager Debra Kuester ("Kuester") about the discrepancies between the number of hours on Arnulfo's time card and the number of hours on Humberto's and Isaac's time cards. Kuester then asked superintendents Ruben Torres ("Torres") and Dave Biba ("Biba") to investigate the matter. Torres met with Humberto about the discrepancies in the time cards first, and determined that Arnulfo had lied about the number of hours he had worked during the week of July 29. Torres then called a breakfast meeting to discuss the issue further. The breakfast meeting took place on August 6, 2002 and was attended by Torres, Arnulfo, Humberto, Isaac, and former crew member Jose Moreno ("Moreno"). At the meeting, Arnulfo was directed by Humberto and Torres to change the hours he had reported on his time sheet to reflect 22 hours of

---

[1] Humberto is Arnulfo's brother, and Isaac is Arnulfo's nephew.

time worked instead of 40. Arnulfo refused to do so, and was fired. Prate issued Arnulfo a final paycheck for 22 hours worked.

Following Arnulfo's termination, Trust Funds brought this motion to enforce, alleging that Prate violated the settlement agreement by: paying their employees by the job rather than by the hour, requiring their employees to keep false time records under the threat of being fired, and discarding work orders, job tickets, and daily time sheets which form the basis of how employees are paid. An evidentiary hearing was scheduled to take place in this matter in November 2002. Three days prior to the hearing, on November 3, 2002, Trust Funds' main witness, Arnulfo, died in a roofing accident. Because Arnulfo could not testify at the hearing, his testimony was presented by way of two affidavits which he had submitted previously. In these affidavits, Arnulfo asserted that his supervisors had told him to report only 22 hours of time worked even though he had allegedly worked 40 hours. Prate objected to the admission of these affidavits, as well as certain other disputed evidence, on hearsay grounds. The Court reserved ruling on these issues until after the parties had briefed them. The disputes concern the following evidence.

First, Trust Funds seeks to admit the two affidavits discussed above in which Arnulfo swears he was told to report 22 hours of time worked even though he had worked 40 hours. Prate argues that the affidavits are inadmissible hearsay. Trust Funds, in response, argues that the affidavits should be admitted under the residual exception of Rule 807 of the Federal Rule of Evidence, which allows hearsay evidence not admissible under any other hearsay exception to be admitted if certain circumstances are present. Second, Trust Funds seeks to admit an affidavit submitted

by Moreno, one of the Prate employees present at the breakfast meeting on August 6, 2002, which states that Torres and Humberto did in fact tell Arnulfo to either alter the hours on his time sheet or risk being fired. Prate objects to the admission of these statements on hearsay grounds, as well. Trust Funds, in response, argues that Moreno's affidavit is admissible under Rule 801(d)(2)(D) as the admission of a party-opponent. Finally, Trust Funds also seeks to admit the testimony of Thomas Shipley ("Shipley"), an individual who was present at the time Arnulfo's affidavits were taken. Trust Funds states that Shipley's testimony is not being offered to establish the truthfulness of the statements in Arnulfo's affidavits, but only to attest to the circumstances surrounding Arnulfo's provision of the affidavits. We will address these evidentiary issues before we decide whether Prate violated the settlement agreement.

## ANALYSIS

### A. Hearsay Objections

#### 1. Moreno's Affidavit

As mentioned above, Moreno testified in his affidavit that Torres and Humberto told Arnulfo that if he did not change his hours, he would be fired. Trust Funds argues that this evidence is admissible as a party-opponent admission under Rule 801(d)(2)(D). To be admissible under Rule 801(d)(2)(D), the statements must be against a party's interest (here, Prate's), and made by that party's agent or servant concerning a matter within the scope of the agency or employment, during the existence of the relationship. F.R.E. 801(d)(2)(D).

Prate does not contest that the statements made by Torres and Humberto were

against Prate's interest. Prate does argue, however, that the statements were not made within the scope of Torres' or Humberto's employment. Prate cites to *Campbell v. Fasco*, 861 F. Supp. 1385 (N.D. Ill. 1994) in support of this contention. In *Campbell*, the plaintiffs sought to admit the testimony of two department heads who stated that their employer had awarded a disproportionately low number of raises to employees over the age of 50. *Id.* at 1392. The *Campbell* court concluded that these statements were not admissible under the hearsay exception of Rule 801(d)(2)(D) because the declarants had not been involved in deciding when and to whom the raises were to be given, and thus the statements were not made within the scope of their employment. *Id.* at 1393.

Prate argues, based on *Campbell*, that Torres' and Humberto's statements were also outside the scope of their employment, as neither Torres nor Humberto had the authority to either direct employees to change the hours on their time sheets or fire them. We disagree with Prate's contention, and find that Torres' and Humberto's statements were made within the scope of their employment. Torres was involved in determining whether Arnulfo had reported too many hours on his time sheet. Indeed, Torres called the meeting with Arnulfo in which he was directed to change the hours on his time sheet, and Torres reported back to Prate regarding Arnulfo's refusal to do so before firing him. As such, we find that the statements allegedly made by Torres, referenced in Moreno's affidavit, concern matters within the scope of his employment.

As for Humberto's statements, Humberto was the crew leader during the week in question and was in charge of gathering and submitting daily time sheets for his crew. He was also responsible for reviewing the individual weekly time sheets submitted by his crew. While Humberto may not have been authorized to fire employees or direct

them to change the number of hours reported on their time sheets, it is clear that his responsibilities included the monitoring of employee time sheets. Thus, we conclude that Humberto's statements as referenced in Moreno's affidavit were also within the scope of his employment.

Since the statements made by Humberto and Torres were against Prate's interest and within the scope of their employment, Moreno's affidavit is admissible under Rule 801(d)(2)(D).

### 2. Arnulfo's Affidavits

Trust Funds argues that the Court should also admit the two affidavits of Arnulfo pursuant to Rule 807.[2] Rule 807, also called the residual exception, permits a court to admit hearsay evidence not specifically covered by any other hearsay exceptions in certain circumstances. The Seventh Circuit has construed the residual exception narrowly to prevent it from becoming "the exception that swallows the hearsay rule." *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998) (citing *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996)). However, the Seventh Circuit has also emphasized that trial courts have considerable discretion in deciding whether a hearsay statement falls into the residual exception. *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999).

To be admissible under the residual exception, the statements must be: (1) sufficiently trustworthy (i.e., there are "circumstantial guarantees of trustworthiness"); (2)

---

[2] Rule 807 is a recodification of former Rules 803(24) and 804(b)(5). The same factors are considered for Rule 807 as were previously considered for Rules 803(24) and 804(b)(5). *United States v. Ochoa*, 229 F.3d 631, 638 (7th Cir. 2000).

material; (3) probative; (4) in the interests of justice; and (5) given to opposing parties with proper notice. *Hall*, 165 F.3d at 1110.

In determining whether hearsay evidence has sufficient "guarantees of trustworthiness" -- the first criteria -- the Seventh Circuit has set forth five non-exhaustive factors for courts to consider: (1) the character of the declarant for truthfulness and honesty and the availability of evidence on the issue; (2) whether the testimony was voluntarily given, under oath, subject to cross-examination and a penalty for perjury; (3) the extent to which the witness' testimony reflects his/her personal knowledge; (4) whether the witness ever recanted his/her testimony; and (5) whether the declarant's statement was insufficiently corroborated. *Id.* at 1110-11; *see also United States v. Santos*, 65 F. Supp. 2d 802, 823-24 (N.D. Ill. 1999).

Regarding the first requirement, Arnulfo's character for truthfulness, Prate argues that we can only speculate as to Arnulfo's motivation for signing the affidavits, and, hence, his truthfulness. Prate argues that the 40 hours allegedly worked by Arnulfo was never corroborated by anyone who worked in his crew, and that the other crewmembers' weekly and daily time sheets indicated that only 22 hours had been worked. Trust Funds, on the other hand, argues that Arnulfo's affidavits are trustworthy based on the proposed testimony of Shipley, who was present when Arnulfo's affidavits were taken. Trust Funds further argues that the affidavits are trustworthy based on the testimony of Humberto who stated that, other than the week of July 29, Arnulfo had correctly reported on his time card the number of hours he worked each week.

While these arguments do not persuade us one way or another as to Arnulfo's character for truthfulness, we note that other factors present in this case do suggest

-7-

that Arnulfo's affidavits are sufficiently trustworthy. First, Arnulfo's testimony was voluntarily given under oath and subject to the penalty of perjury. In addition, Arnulfo's testimony was based entirely on his personal knowledge, and he never recanted his testimony. Finally, Arnulfo's testimony was corroborated by Moreno.[3] Based on these facts, we find that Arnulfo's affidavits are sufficiently trustworthy.

As for the next two criteria -- materiality and probative value -- Trust Funds argues that the affidavits satisfy these tests because they address issues pertaining to the question of whether Prate violated the settlement agreement, which is the central issue of Trust Funds' motion to enforce. Trust Funds cites Newsome v. James, 2000 WL 528475 (N.D. Ill. 2000) in support of their contention that Arnulfo's affidavits satisfy these tests. In Newsome, the court admitted certain hearsay statements because, among other things, the statements were more probative than any other evidence that could be procured since the witness was dead. Id. at *6. Prate responds that Arnulfo's testimony is less probative and reliable than Humberto's testimony (that Arnulfo recorded more hours than he actually worked) since Humberto testified at the evidentiary hearing and was subject to cross-examination.

While we agree that Humberto's testimony is probative as to whether Arnulfo worked 22 or 40 hours during the week in question, we find that nothing is more probative on this point than Arnulfo's testimony. Thus, we conclude, as in Newsome, that the evidence is both material and probative.

---

[3] While Moreno may not have had any knowledge as to the number of hours worked by Arnulfo, as Prate argues, he was present at the breakfast meeting where Arnulfo was told to reduce the number of hours on his time card and where no one disputed that Arnulfo worked forty hours.

Next, we find that admitting Arnulfo's statements is also in the interests of justice -- and therefore meets the fourth criteria -- as it allows Arnulfo the chance to rebut the testimony of Humberto. Although Prate points out that they never got the opportunity to cross-examine Arnulfo on these statements and that it is therefore not in the interests of justice to admit the statements, we find that the balance tips in favor of Trust Funds here, as admitting the statements is the only way Arnulfo can get his proverbial day in court.

Finally, we find that Arnulfo's statements meet the last criteria, namely, they were given with proper notice. They were provided to Prate as exhibits to Trust Funds' motion to enforce as well as their reply brief.

Because the affidavits are sufficiently trustworthy, are probative and material, will serve the interests of justice if admitted, and were given with proper notice, we will admit Arnulfo's affidavits under Rule 807.[4] As such, Prate's motion to exclude hearsay evidence is denied.

## B. Violation of the Settlement Agreement

Having decided the preliminary evidentiary issues in this case, we will now address the central issue of Trust Funds' motion to enforce, namely, whether Prate violated the settlement agreement by paying their employees by the job rather than by the hour, requiring their employees to keep false time records under the threat of being fired, and/or discarding work orders, job tickets and daily time sheets which form the

---

[4] Because we find that Arnulfo's affidavits should be admitted, we do not address whether Shipley's proposed testimony should also be admitted, as such testimony was only being offered to attest to the circumstances surrounding Arnulfo's provision of the affidavits, and not to establish the truthfulness of the statements in the affidavits.

basis of how employees are paid.

Trust Funds' main piece of evidence in support of their contention that Prate violated the settlement agreement is Arnulfo's affidavits. In one of his affidavits, Arnulfo states that he submitted his time sheet for the week of July 29 to Humberto, who was in charge of the crew and responsible for gathering and submitting the weekly time sheets. Arnulfo's affidavit further states that Humberto told him that he could not report 40 hours on his time sheet for that week and that he (Arnulfo) responded that he would not change the hours he had recorded. Arnulfo then states in his affidavit that Torres told him during the breakfast meeting on August 6, 2002 that he must change his hours or he would be terminated. Arnulfo stated that he again refused to change his hours and that he was thereafter fired and issued a final paycheck for only 22 hours of work.

To bolster Arnulfo's testimony, Trust Funds relies on Humberto's testimony that Arnulfo had (with the exception of the week of July 29) always accurately reported the hours he had worked. Trust Funds also relies on the affidavit of Moreno, who was present at the August 6 breakfast meeting and who stated that Torres and Humberto told Arnulfo to lower the hours recorded on his time sheet. Moreno further stated in his affidavit that Arnulfo refused to do so on the alleged basis that he had worked 40 hours that week. In addition, Moreno stated that no one disputed that 40 hours was actually worked by Arnulfo. Finally, Trust Finds relies on Torres' testimony that he was not concerned with the start and lunch times reported on employees' time cards, but, rather, only the total number of hours worked.

Prate, in response, contends that the testimony fails to show a violation of the settlement agreement, and, instead, only shows a dispute regarding Arnulfo's

-10-

termination. Prate denies that they were paying employees by the job rather than by the hour and that they told Arnulfo to falsify his time card under the threat of termination. Prate asserts, instead, that Arnulfo was merely the subject of an internal investigation for having submitted a time sheet which reflected more hours worked than the rest of his crew. In support of this contention, Prate relies on Torres' testimony that he reviewed the crew's time sheets and determined that Arnulfo worked fewer hours than what he had reported on his time sheet, and that he only fired Arnulfo after giving him the opportunity to change his hours. Prate also relies on Humberto's testimony that the crew worked only 22 hours, as well as the crew members' time sheets which also indicated only 22 hours had been worked. Prate further relies on Humberto's testimony that Prate had been paying employees by the hour. In addition, Prate relies on the testimony of Kuester to show that Prate investigated the matter before deciding to terminate Arnulfo. Finally, Prate argues that they believed, based on their investigation, that Arnulfo worked only 22 hours, and therefore paid him for only 22 hours (as well as paid benefit contributions on his behalf to Trust Funds for those 22 hours) in compliance with the settlement agreement. Prate also argues that Trust Funds provided no evidence to show that they had been discarding any records which were required to have been kept by the settlement agreement.

In light of all the evidence presented, we are unable to find that Prate violated the settlement agreement. While it is clear that Arnulfo reported 40 hours on his time sheet and was asked by Prate to reduce the number of hours reported, it is unclear whether Arnulfo did in fact work 40 hours. In other words, the evidence does not establish, in our view, that Arnulfo was telling the truth and that Humberto was lying with

respect to the number of hours worked by Arnulfo during the week of July 29, 2002. Accordingly, we are unable to conclude that Prate was paying their employees by the job rather than by the hour, or requiring their employees to keep false time records under the threat of being fired. We are also unable to conclude, based on the evidence presented, that Prate discarded work orders, job tickets, and daily time sheets which formed the basis of how employees are paid, in violation of the settlement agreement.

## CONCLUSION

Because we find that Trust Funds has not established a violation of the settlement agreement, Trust Funds' First Motion to Enforce the Settlement Agreement is denied. For reasons discussed above, Prate's Motion to Exclude Hearsay Evidence is also denied. It is so ordered.

ENTER:

*[signature]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: May 20, 2003**